IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

                              :
DEVON ROBINSON
                              :

    v.                        :    Civil Action No. DKC 11-2569

                              :
DARCARS OF NEW CARROLLTON, INC.,
et al.                        :

## MEMORANDUM OPINION

Presently pending and ready for review in this employment discrimination case is the partial motion to dismiss the second amended complaint filed by Defendants DarCars of New Carrollton, Inc. d/b/a DarCars Chrysler, Jeep, Dodge of New Carrollton ("DarCars"), Ali Zarrabi, and Henry Scroggin.  (ECF No. 14). The issues have been fully briefed, and the court now rules, no hearing deemed necessary.  Local Rule 105.6.  For the following reasons, the motion will be granted in part and denied in part.

## I.    Background

### A.    Factual Background

Plaintiff Devon Robinson alleges the following facts.  On February 29, 2008, Mr. Robinson, who is African-American, applied for a job as a sales associate for DarCars.  He was hired and began work on March 10, 2008.  Shortly after Mr. Robinson began his employment, he was subjected to "severe, intentional, and pervasive hostility, including racial slurs and

derogatory language from co-workers, such as the frequent use of the work 'nigger.'" (ECF No. 9 ¶ 9).

For example, on an unspecified date, Mr. Scroggin, the finance manager, entered the break room where Mr. Robinson and four other African-American employees were seated. There was a box of donuts available for general consumption. Mr. Scroggin opened the box, allegedly stated "niggers always eating the chocolate donuts, like they can't eat nothing else," and then left the break room. (*Id.*). On May 3, 2008, Mr. Scroggin directly addressed Mr. Robinson as a "negro." (*Id.* ¶ 10).[1] Later, on May 12, 2008, Mr. Scroggin directly addressed Mr. Robinson as a "trifling brother." (*Id.* ¶ 11).

On another unspecified date, a supervisor named Alexander Armin called Mr. Robinson's dreadlock-style hair a "problem" and told him that he was a "brave man for wearing [his] hair like a girl." (*Id.* ¶ 12). Mr. Armin further stated that Mr. Zarrabi, the general manager, did not like Mr. Robinson's hairstyle and that Mr. Robinson should cut it. Two days after this interaction, Mr. Armin pulled Mr. Robinson's hair from behind and said, "I thought I told you to do something with this." (*Id.* ¶ 12).

---

[1] The manager on duty "instructed [Mr. Scroggin] not to 'call them negros,' during which [Mr. Scroggin] walked off." (*Id.* ¶ 10). Mr. Scroggin received no further reprimand.

Separately, on a particularly warm day during the summer of 2008, Mr. Robinson borrowed a hat from another employee to attend to customers on the outdoor sales lot. Although Mr. Robinson's colleague had worn the hat without incident, Mr. Robinson "was accosted by Zarrabi on his way to the sales lot" and "publicly berated . . . in front of customers and co-workers for wearing the hat and failing to cut his hair." (*Id.* ¶ 13). During this episode, Mr. Zarrabi requested a dollar from an on-looking employee, placed the dollar on a sales desk, and told Mr. Robinson "to get him some water because he had a 'big ass that needs to be kissed.'" (*Id.*). DarCars did not take corrective actions to address these matters. (*Id.* ¶ 14).

In yet another instance, sometime in June 2008, one of Mr. Robinson's white colleagues who had worked for DarCars for approximately the same amount of time as Mr. Robinson requested and was granted use of a DarCars vehicle. When Mr. Robinson asked his supervisor if he could use a company vehicle to attend the birth of his daughter, he was refused. That same month, Mr. Robinson indicated his interest in purchasing a vehicle while he was working. Although two other white employees were allowed to purchase vehicles during their shifts, Mr. Robinson's request was denied. He was told to conduct that business on his own time.

Mr. Robinson alleges that as a result of these events, his sales numbers decreased, and "he felt compelled to resign and terminate his employment with DarCars on or about July 8, 2008." (*Id.* ¶ 18).

**B.  Procedural Background**

On July 23, 2008, Mr. Robinson notified the Equal Employment Opportunity Commission ("EEOC") of his intent to sue Defendants pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.  He filed a formal charge of discrimination in November 2008.  When the EEOC did not respond right away, Mr. Robinson filed a second charge on March 20, 2009, which "substantively mirrored those [particulars] in the prior Charge of Discrimination."  (*Id.* ¶ 6.b; *see also id.* at 29).  The EEOC investigated both charges, and, on March 10, 2011, it issued a Right-to-Sue letter to Mr. Robinson.  (*Id.* at 32).

On May 31, 2011, Mr. Robinson filed a complaint against Defendants in the Circuit Court for Prince George's County, Maryland.  After service, Defendants timely removed to this court on the basis of federal question jurisdiction.  (ECF No. 1).  Mr. Robinson amended his complaint as of right on September 26, 2011.  (ECF No. 9).  The amended complaint, which Mr. Robinson styles as the second amended complaint, contains nine counts:  (1) intentional infliction of emotional distress

against all Defendants; (2) a hostile work environment claim pursuant to 42 U.S.C. § 1981 against all Defendants; (3) a disparate treatment claim pursuant to § 1981 against DarCars and Mr. Zarrabi; (4) a hostile work environment claim pursuant to Title VII against all Defendants; (5) a disparate treatment claim pursuant to Title VII against DarCars and Mr. Zarrabi; (6) violation of Division 12, Subdivision 7 of the Prince George's County Code against DarCars and Mr. Zarrabi;[2] (7) vicarious liability against DarCars; (8) negligence against DarCars and Mr. Zarrabi; and (9) breach of contract against DarCars.

On October 11, 2011, Defendants answered the second amended complaint. That same day, after filing the answer, they filed the pending partial motion to dismiss. (ECF No. 14). Mr. Robinson filed opposition papers on October 28, 2011. (ECF No. 15). Defendants replied on November 17, 2011. (ECF No. 17).

## II.  Standard of Review

Although Defendants style their motion as a partial motion to dismiss, it is actually a motion for judgment on the pleadings because they filed an answer to the second amended complaint prior to their motion. Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed

---

[2] More completely, this count appears to be brought under Part II, Subtitle 2, Division 12, Subdivision 7 of the Prince George's County Code.

- but early enough not to delay trial — a party may move for judgment on the pleadings." Under the circumstances here, the motion is governed by the same standard governing motions to dismiss for failure to state a claim under Rule 12(b)(6). *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal marks omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir.

6

1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134
(4th Cir. 1993)).   In evaluating the complaint, the court need
not accept unsupported legal allegations.   *See Revene v. Charles
Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).   Nor must it
agree with legal conclusions couched as factual allegations,
*Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations
devoid of any reference to actual events, *United Black
Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see
also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).
"[W]here the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged, but it has not 'show[n] . . . that the pleader is
entitled to relief.'"   *Iqbal*, 129 S.Ct. at 1950 (quoting
Fed.R.Civ.P. 8(a)(2)).   Thus, "[d]etermining whether a complaint
states a plausible claim for relief will . . . be a context-
specific task that requires the reviewing court to draw on its
judicial experience and common sense."   *Id*.

## III. Analysis

Defendants move for judgment on the pleadings as to Counts
One and Eight.   They also move for judgment on the pleadings as
to Counts Four and Five with respect to the individual
Defendants.

7

### A.   Count One:  Intentional Infliction of Emotional Distress

To recover for intentional infliction of emotional distress, Mr. Robinson must allege facts showing that Defendants' conduct was (1) intentional or reckless, (2) extreme and outrageous, (3) causally connected to Mr. Robinson's emotional distress, and (4) the distress caused was severe. *Baltimore-Clark v. Kinko's Inc.*, 270 F.Supp.2d 695, 701 (D.Md. 2003) (citing *Harris v. Jones*, 281 Md. 560, 566 (1977)). "Each of these elements must be pled and proved with specificity. It is not enough for a plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to demonstrate that they exist." *Foor v. Juvenile Servs. Admin.*, 78 Md.App. 151, 175 (1989). The tort is rarely viable in Maryland. *See Respess v. Travelers Cas. & Sur. Co.*, 770 F.Supp.2d 751, 757 (D.Md. 2011).

Defendants argue that Mr. Robinson has insufficiently alleged the second and fourth elements of an intentional infliction of emotional distress claim with respect to any Defendant. (*See* ECF No. 14, at 4; ECF No. 17, at 3-4). As to the second element, Mr. Robinson counters by identifying two paragraphs in the second amended complaint as illustrative examples of the "extreme and outrageous" conduct of Defendants. (ECF No. 15-1, at 3).

First, Mr. Robinson points to the incident in the break room in which Mr. Scroggin allegedly used the racial slur "nigger" in the presence of himself and four other African-American employees. Despite the loaded history of that particular epithet, however, Mr. Scroggin's putative conduct does not constitute "extreme and outrageous" conduct. As Judge Davis explained in *Collier v. RAM Partners, Inc.*, 159 F.Supp.2d 889 (D.Md. 2001), which also involved use of the same racial slur: "racial epithets are no doubt harmful; however, although certainly abhorrent, [the defendant's] conduct and [the employer's] alleged unresponsiveness to it do not rise to the high level of outrageousness that the Maryland Court of Appeals has required for a cause of action based on intentional infliction of emotional distress." *Id.* at 902; *see also Demby v. Preston Trucking Co.*, 961 F.Supp. 873, 882 n.13 (D.Md. 1997) (expressing skepticism that use of such language would constitute outrageous conduct); *Brumback v. Callas Contractors, Inc.*, 913 F.Supp. 929, 944 n.12 (D.Md. 1995) (same).

Judge Davis went on to describe some of the unique cases in which the Court of Appeals of Maryland has found sufficiently outrageous conduct. For example, in *Figueiredo-Torres v. Nickel*, 321 Md. 642 (1991), a psychologist, while acting as the plaintiff and his wife's marriage counselor, had sexual relations with the plaintiff's wife. In *B.N. v. K.K.*, 312 Md.

9

135 (1988), the defendant intentionally exposed the plaintiff to transmission of herpes.   And in *Young v. Hartford Accident & Indemnity Co.*, 303 Md. 182 (1985), an insurer insisted that the plaintiff submit to a psychiatric examination to harass her and to force her either to abandon her claim or to commit suicide. In light of these cases, the allegations regarding the incident in the break room do not meet the high standard required to plead the "extreme and outrageous" element of an intentional infliction of emotional distress claim.

Second, Mr. Robinson points to the incident with the hat during which Mr. Zarrabi allegedly "publicly berated" him for wearing it and not cutting his hair.   If the allegations regarding the incident in the break room did not set forth sufficiently outrageous conduct, however, the allegations regarding the hat incident would not constitute outrageous conduct either.   Indeed, "poor behavior at the workplace rarely rises to the level of extreme and outrageous conduct." *Rollins v. Verizon Md., Inc.*, No. RDB 09-2379, 2010 WL 4449361, at *8 (D.Md. Nov. 5, 2010).   As in *Rollins*, where the plaintiff's supervisor yelled at her and disciplined her in front of her co-workers, the fact that Mr. Zarrabi "publicly berated" Mr. Robinson and used uncivil language may have embarrassed or upset Mr. Robinson, but such behavior is not sufficiently "extreme and outrageous."

Looking beyond these two examples, none of the other facts alleged by Mr. Robinson describe conduct that could be the basis for an intentional infliction of emotional distress claim. Not even the allegations surrounding the potential battery — the incident in which Mr. Armin pulled Mr. Robinson's hair — is enough to state a claim. *Cf. Tavakoli-Nouri v. State*, 139 Md.App. 716 (2001) (allegations of being handcuffed and dragged across a room during an arrest did not sufficiently state the "extreme and outrageous" conduct element of an intentional infliction of emotional distress claim, though they did state an excessive force claim); *see also Cont'l Cas. Co. v. Mirabile*, 52 Md.App. 387, 405 (1982) (jury finding of battery did not warrant reversal of a directed verdict in defendant's favor regarding an intentional infliction of emotional distress claim because such conduct was not "extreme and outrageous"). Because the complaint does not adequately describe this second element as to any Defendant, the court need not address Defendants' argument that the fourth element is also not sufficiently alleged, and judgment on the pleadings will be entered in favor of all Defendants on Count One.

**B.   Counts Four and Five:  Title VII**

Generally speaking, Title VII suits may only be brought against employers, not individuals. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998).  Therefore, as

Mr. Robinson concedes (ECF No. 15, at 1; ECF No. 15-1, at 4), his Title VII claims against Mr. Zarrabi and Mr. Scroggin necessarily fail.   Judgment on the pleadings will be entered accordingly.

### C.   Count Eight:  Negligence

Regarding the eighth count, Defendants argue that Mr. Robinson's negligence claim is preempted by his claims under Title VII, citing *Bishop v. Board of Education*, No. DKC 11-1100, 2011 WL 2651246 (D.Md. July 5, 2011), *aff'd sub nom. Bishop v. Board of Education for Calvert County Public Schools*, No. 11-1854, 2012 WL 503845 (4th Cir. 2012).   Mr. Robinson responds that *Ruffin Hotel Corp. of Maryland, Inc. v. Gasper*, 418 Md. 594 (2011), is more apposite and leads to the conclusion that his negligence claim should be allowed to proceed.   In the end, both cases actually stand for the same relevant proposition.

Both *Bishop* and *Ruffin Hotel* dealt with the issue of whether Title VII preempts a negligent retention and supervision/hiring claim.  *Bishop*, 2011 WL 2651246, at *10-11; *Ruffin Hotel Corp. of Md., Inc.*, 418 Md. at 614-18.   And both cases held that where the prohibition against the predicate action (such as an abusive discharge) forming the basis of the negligence claim is founded in a statute like Title VII, a separate negligence claim cannot stand.   *See Bishop*, 2011 WL 2651246, at *10-11; *Ruffin Hotel Corp. of Md., Inc.*, 418 Md. at

615.   As *Bishop* itself recognized, *Ruffin Hotel* further clarified that "a plaintiff may bring negligence claims based on statutorily proscribed behavior if an independent cause of action under common law would have existed prior to enactment of the statute." *Bishop*, 2011 WL 2651246, at *11.   Thus, for example, where a negligence claim is based on common law assault or battery, Title VII does not preempt the negligence claim. *Ruffin*, 418 Md. at 615-16.

Here, Mr. Robinson's negligence claim is ostensibly founded upon a hostile work environment, which has its origins in Title VII.   (*See* ECF No. 9 ¶¶ 70-72).   Some of the alleged facts making up the harassment, however, could constitute a separate battery claim:[3]   the second amended complaint alleges that Mr. Armin, after referencing Mr. Zarrabi's authority and opinion, "pulled Plaintiff's hair from behind and said 'I thought I told you to do something with this.'"   (*Id.* ¶ 12).   Therefore, it cannot be said that Title VII preempts this claim of negligence. Accordingly, Count Eight will remain.

---

[3] "A battery is the intentional, unpermitted touching of the body of another that is harmful or offensive to the person who was touched." *Doe v. Archdiocese*, 114 Md.App. 169, 180 (1997).

## IV.  Conclusion

For the foregoing reasons, the partial motion to dismiss filed by Defendants will be granted in part and denied in part. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge